IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Ronni Drake, | ) | Case No.: 2:19-cv-00574-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| CORRECTIONS, WARDEN CECILIA | ) | |
| REYNOLDS, individually and/or in her | ) | |
| official capacity as Warden of Lee | ) | |
| Correctional Institution, and WARDEN | ) | |
| AARON JOYNER, individually and/or in | ) | |
| his official capacity as Warden of Lee | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This matter was initially before the Court with the Report and Recommendation of United States Magistrate Mary Gordon Baker ("Report and Recommendation" or "Report"), made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina.[1] (DE 57.) Defendants filed a motion to sever (DE 23) and a motion for summary judgment alleging that Plaintiffs did not exhaust their administrative remedies pursuant to Prison Litigation Reform Act ("PLRA"). (DE 24.) Plaintiffs filed responses opposing the motions (DE 28 and 34), and Defendants filed replies (DE 38, 49, and 56). The Report recommended *inter alia* that the Court deny Defendants' motion for summary judgment on the question of exhaustion

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

because "these Plaintiffs have shown the administrative remedy procedure was not available to them." (DE 57, p. 37.) Defendants filed an Objection to the Report, asserting that the magistrate applied the wrong standard of review on the exhaustion question, notwithstanding the fact that it filed its motion to dismiss pursuant to Rule 56, Fed. R. Civ. P. The Court previously found that Defendants did not object to the Report's denial of summary judgment (i.e., finding a genuine issue of material fact in dispute regarding exhaustion). Rather, Defendants asserted an evidentiary hearing was necessary to resolve any disputed facts regarding exhaustion based on a preponderance of the evidence standard, not a Rule 56 standard (i.e., viewing all evidence in the light most favorable to the non-moving party). (DE 81, pp. 9-10.)

The Court previously ruled on the Report and Recommendation and severed the Plaintiff Ronni Drake's ("Plaintiff" or "Drake") claims and denied Defendants' motion for summary judgment as to Plaintiff's claims brought under 42 U.S.C. § 1983 because there remain issues of fact as to whether plaintiffs exhausted their claims. The Court declined to adopt the parts of the Report that deemed exhaustion to be satisfied or unavailable.

## **EXHAUSTION OF ADMINISTATIVE REMEDIES**

The singular issue before the Court at this time is whether Plaintiff has exhausted his administrative remedies.[2] (DE 81.) To that end, this Court Ordered that:

---

[2] On September 15, 2020, the Honorable Timothy M. Cain entered a text order directing the parties to provide information related to the issue of exhaustion and the likelihood of an evidentiary hearing to rule on the issue. At that time, the issue of exhaustion involved six individuals in the custody of the South Carolina Department of Corrections (SCDC) and their respective claims. Four of the six individuals' lawsuits (involving diverse factual issues on exhaustion) have been resolved or otherwise disposed of and the remaining two claims (Brown, 2:19-cv-00572-JD, and Drake, 2:19-cv-00574-JD) are now pending before this Court.
  Since the posture and circumstances of the cases have changed since the September 15, 2020, text order, this Court directed the parties to revise responses previously given to the Court regarding logistical considerations for a possible hearing. (DE 183.) While the parties provided the logistical information and a list of witnesses they anticipated testifying at a hearing, Defendants did not provide any additional information to support or refute Plaintiff's exhaustion defense.

2

> as a precursor to the Court determining the scope and means for conducting an exhaustion of PLRA administrative remedies hearing, *if necessary*, the Plaintiff is directed (in addition to the above-requested responses) to provide the Court with a pre-hearing brief on his exhaustion of PLRA's administrative remedies and/or justification for non-exhaustion. *The pre-hearing brief and response must be supported by an affidavit(s) and other evidence in support of the respective parties' position*. The Plaintiff shall file his pre-hearing brief by April 30, 2021. The pre-hearing brief, response, and reply shall be filed in accordance with local rules 7.06 and 7.07, respectively.

(DE 183) (emphasis added.)

Drake filed his Prehearing Brief Regarding Exhaustion of Administrative Remedies on April 30, 2021, along with sixteen affidavits and/or other evidence supporting his exhaustion defense. (DE 187.) Plaintiff avers in his affidavit that:

> I am fearful for my life and have already several threats by gang members. Investigations do not improve the situations nor does SCDC succeed in separating the victims from their assailants. On July 15, 2017, was assaulted by gang members with an illegal contraband weapon when the officer on duty left and/or abandoned his post and/or failed to intervene, despite prior notice, in violation of SCDC polices. Plaintiff Darnell Brown was also stabbed in the same incident. After my assault, I was threatened and told not to file a grievance or say anything about the attack. Specifically, I was told by the captain that I really didn't want to file or say anything because I was in SCDC and I had to live in here. Upon hearing this, I was under the belief that I would be retaliated against and/or killed if I filed a grievance. I did not file a Request to Staff, a Step 1 Grievance, or Step2 Grievance because I was afraid for what would happen to me if I did. I believed that if I had filed a grievance about the assault, I would be placing my life in serious jeopardy, as the Captain told me.

(DE 187-2, pp. 2-3.)

Although Defendants have disputed these allegations in their previous memorandums to the Court, Defendants did not file a response to Plaintiff's Prehearing Brief accordance with this Court's Order. Given Defendants failure to file a response to Plaintiff's pre-hearing brief on his exhaustion of PLRA's administrative remedies and/or justification for non-exhaustion, the Court dispenses with an evidentiary hearing with testimony and decides this matter on the record before

the Court. For the reasons set forth herein, this Court finds that Drake has exhausted his administrative remedies.

## DISCUSSION

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see also Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. Jones v. Bock, 549 U.S. 199, 218 (2007). Ordinarily, an inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002); see also White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process).

The SCDC grievance procedure is outlined in SCDC Policy GA-01.12 ("Inmate Grievance System"). (DE 34-1.) Subject to certain exceptions, the Inmate Grievance System requires that inmates initially attempt to resolve grievances informally by "submitting a Request to Staff Member Form to the appropriate supervisor/staff within eight (8) working days of the incident." (DE 34-1, ¶ 13.2.) Informal resolution is not required, however, when "the matter involves allegations of criminal activity." (Id.) With respect to criminal activity complaints, the inmate

4

must file Form 10-5 Step 1 within five working days of the alleged incident. (Id.) The Inmate Grievance System provides:

> Any grievance which alleges criminal activity will be referred immediately to the Chief/designee, Inmate Grievance Branch. The IGC will note on the grievance tracking CRT screen that the grievance has been forwarded to the Inmate Grievance Branch for possible investigation by the Division of Investigations and the date on which the grievance was forwarded. The Chief/Designee, Inmate Grievance Branch, will consult with the Division of Investigations to determine if a criminal investigation would be appropriate. If deemed appropriate, the grievance will be forwarded to the Division of Investigations, to be handled in accordance with applicable SCDC policies/procedures. The grievance will be held in abeyance until the Division of Investigations completes their review/investigation.

(Id. at ¶ 15.) If it is determined that a criminal investigation is not required, the grievance will be processed in accordance with the procedures applicable to non-criminal activity grievances. (Id.)

If an inmate files a Step 1 grievance that does not involve criminal activity, the Warden is required to respond in writing within 45 days and advise the inmate of his right to appeal to the next level:

> The Warden will respond to the grievant in writing (in the space provided on SCDC Form 10-5, Step 1), indicating in detail the rationale for the decision rendered and any recommended remedies. The grievant will also be informed of his/her rights to appeal to the next level. The Warden will respond to the grievant no later than 45 days from the date the grievance was formally entered into the OMS system by the IGC. The response will be served by the IGC to the grievant, within ten (10) calendar days, and the grievant will sign and date the response acknowledging receipt. The IGC will maintain the original grievance for the inmate's grievance file and a copy will be given to the inmate.

(Id. at ¶ 13.5.) The inmate may then appeal by filing a Form 10.5(a) Step 2 appeal to the Inmate Grievance Coordinator within five days of the receipt of the response. (Id. at ¶ 13.7) The appeal is referred to the "responsible official" who is required to make a final decision within 90 days. (Id.)

At issue here is whether the administrative remedies were available to Plaintiff. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of

his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." 136 S.Ct. 1850, 1853–54 (2016). Where threats or intimidation is alleged, courts have generally found that they must be "substantial and serious enough that they would deter a similarly situated prisoner of ordinary firmness from pursuing administrative remedies." Poux v. FCI Bennettsville, Case No. 4:10-cv-00433, 2010 WL 5141708, at *3 (D.S.C. Dec. 8, 2010), aff'd, 446 F. App'x 577 (4th Cir. 2011); see, e.g., Rinaldi v. United States, 2018 WL 4344674, at *6 (3d Cir. Sept. 12, 2018); Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004).

To prove unavailability, the inmate must "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011). "The district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" Zander v. Lappin, 415 F. App'x 491, 492 (4th Cir. 2011) (quoting Aquilar–Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

In support of their motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies, Defendants submitted affidavits from Sherman Anderson, the Chief of the Inmate Grievance Branch for the SCDC, asserting that each Plaintiff failed to exhaust their

6

administrative remedies for various reasons. (DE 24-2 – 24-8.) In response to Defendants' motion, Plaintiff submitted an affidavit explaining why his administrative remedies should be considered exhausted here. (DE 34-5.)  Plaintiff also submitted an affidavit from his expert, James Evans Aiken, addressing the barriers to the grievance process faced by Plaintiffs. (DE 34-2.) Defendants then submitted updated affidavits from Mr. Anderson with their reply brief in support of their motion. (DE 49-1 – 49-7.)  However, these updated affidavits did not address the specific allegations raised by Drake.

It is undisputed that Drake failed to file any grievances following the incidents alleged in the Complaint. However, in Drake's pre-hearing brief on his exhaustion of PLRA's administrative remedies and/or justification for non-exhaustion he attests via affidavit a fear of retaliation caused this failure. Specifically, Drake avers that after his prison attack, he was told by the captain that I really didn't want to file or say anything because I was in SCDC and I had to live here. Upon hearing this, I was under the belief that I would be retaliated against and/or killed if I filed a grievance. I did not file a Request to Staff, a Step 1 Grievance, or Step 2 Grievance because I was afraid for what would happen to me if I did. I believed that if I had filed a grievance about the assault, I would be placing my life in serious jeopardy, as the Captain told me. (DE 187-2, ¶¶ 15-17.) Drake claims this fear was reasonable, stating: "Unfortunately the gang members that attacked me work with some of the correctional officers, making it unsafe to file grievances or complaints concerning the gangs and the correctional officers." (Id. at ¶ 20.)  Defendants offer no response to Plaintiff's pre-hearing brief advancing his criminal activity and fear of retaliation justification for non-exhaustion of his administrative remedies.  While this Court's de novo review of the record

shows that Defendants refute these declarations, Defendants' position to date absent a specific response supported by affidavits is anecdotal at best.[3]

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, based on the facts presented and the absence of a response from the Defendants to the Plaintiff's pre-hearing brief on his exhaustion of PLRA's administrative remedies and/or justification for non-exhaustion, the Court finds that the Plaintiff has exhausted his administrative remedies.

## CONCLUSION

It is, therefore, **ORDERED** that Plaintiff Ronni Drake has exhausted his administrative remedies, and his claims are properly before this Court for further adjudication.

**IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Greenville, South Carolina
May 28, 2021

---

[3] For instance, Defendants claim that Drakes' affidavit only offers self-serving and conclusory allegations which belie the truth because prior to the events in question Drake had submitted 10 kiosk requests and 5 grievances. (DE 49, p. 19.) Defendants contend that this evidence demonstrates that Plaintiff is prolific user of the SCDC grievance system; and therefore, the rare circumstance where the grievance process is unavailable has not been met. (DE 49, p. 22.) This Court disagrees given the lack of response to the specific allegations and arguments in Plaintiff's pre-hearing brief.